[865 NE2d 1224, 834 NYS2d 58]

# THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN N. ROWLAND, Appellant.

Argued February 15, 2007; decided March 29, 2007

## POINTS OF COUNSEL

*Paul J. Connolly,* Delmar, for appellant. The promise that the aggregate sentence on defendant's present convictions would be concurrent with the sentence on the prior criminal possession in the fourth degree conviction became unfulfillable upon vacatur of that prior conviction, and County Court was therefore required to grant defendant's motion to vacate the present judgment of conviction. (*Boykin v Alabama,* 395 US 238; *Brady v United States,* 397 US 742; *Shelton v United States,* 246 F2d 571; *Santobello v New York,* 404 US 257; *Johnson v Lumpkin,* 769 F2d 630; *People v Frederick,* 45 NY2d 520; *People v Pichardo,* 1 NY3d 126; *People v Puckett,* 270 AD2d 364; *People v Panetta,* 250 AD2d 710, 92 NY2d 903; *People v Boyle,* 164 AD2d 938.)

*Nicholas E. Tishler, Special Prosecutor,* and *James A. Murphy, III, District Attorney,* Ballston Spa, for respondent. I. On his direct appeal defendant was not entitled to vacatur of the greater sentence ordered to run concurrently with an earlier imposed sentence that was vacated. (*People v Pichardo,* 1 NY3d 126; *People v Boston,* 75 NY2d 585; *People v Frederick,* 45 NY2d 520.) II. On his collateral appeal, it was not an abuse of discretion to deny defendant's motion pursuant to Criminal Procedure Law article 440 to vacate his plea. (*People v Pichardo,* 1 NY3d 126; *People v Clark,* 45 NY2d 432; *People v Fuggazzatto,* 62 NY2d 862; *People v Boston,* 75 NY2d 585; *People v Hooper,* 302 AD2d 894; *People v Walker,* 224 AD2d 781; *People v Catu,* 4 NY3d 242; *People v Coles,* 62 NY2d 908; *People v Van Deusen,* 7 NY3d 744.)

## OPINION OF THE COURT

SMITH, J.

We held in *People v Pichardo* (1 NY3d 126 [2003]) that a defendant was entitled to withdraw his guilty plea where the plea had been induced by a promise that the defendant's prison sentence would be concurrent with his sentence on a previous conviction and where, because the previous conviction was overturned, the promise could not be kept. In *Pichardo,* the earlier sentence was much the longer of the two, so that the promise of concurrent sentencing meant that the second

sentence, entered on the plea, carried no additional jail time. In this case, we hold that the rule of *Pichardo* applies even where the second sentence is longer, and thus the promise of concurrent sentencing does not mean that no additional time will result from the guilty plea.

Defendant was indicted in August of 2003 for murder and a number of other crimes as a result of the shooting of Anthony Tagliarino. This indictment was not defendant's only legal problem. In early 2004, while the murder case was pending, he was sentenced on his convictions for two other crimes, apparently unrelated to the Tagliarino shooting: he received 1 to 3 years for a violation of probation, and 2 to 4 years for possession of stolen property. These two sentences ran consecutively to each other, and therefore defendant was already facing a minimum of three and a maximum of seven years in prison when the murder case came to trial in June of 2004.

On the fifth day of the murder trial, a plea bargain was reached: Defendant entered an *Alford* plea to a count of criminally negligent homicide and a count of weapons possession. It was part of the plea bargain that defendant's sentences for these crimes would run consecutively to one another and would total 4 to 8 years, but that they "would run concurrent with the previously imposed sentences." Thus it seems that the anticipated effect of the plea bargain in the murder case was to add a year to the total time defendant was facing.

Defendant's possession of stolen property conviction was reversed in early 2005, and he later made a plea bargain on that charge resulting in a one-year sentence—a reduction of 1 to 3 years from the sentence that had been in effect at the time of his guilty plea. Defendant then moved to vacate the conviction entered on his *Alford* plea, asserting that he would not have entered the plea but for the existence of the 2-to-4-year sentence for possession of stolen property, and his expectation that the sentence resulting from that plea would be concurrent with that preexisting sentence. County Court denied the motion, and the Appellate Division affirmed the denial, as well as defendant's conviction and sentence on the *Alford* plea. A Judge of this Court granted leave to appeal, and we now reverse.

This case is controlled by *Pichardo*. There, the defendant pleaded guilty to criminal sale of a controlled substance, on the understanding that he would receive a 1-to-3-year sentence that would be concurrent with an existing 20-years-to-life sentence for murder. The murder conviction was vacated, and the defen-

dant was acquitted of murder after a retrial. He then moved to withdraw his plea to the drug sale charge. We held that the motion should have been granted, saying: "[W]hen a guilty plea is induced by the court's explicit promise that the defendant will receive a lesser sentence to run concurrently with a sentence in another case, and that conviction is overturned, the defendant may withdraw his plea and face the indictment, since the promise cannot be kept" (1 NY3d at 129).

This case differs from *Pichardo* only in that the preexisting sentence here was a year shorter than the one agreed to in the plea bargain; in *Pichardo,* where the preexisting sentence was longer, we observed that the agreement to concurrent sentencing amounted to an "understanding that, by virtue of the plea, there would be *no* additional prison time" (*id.* [emphasis added]). But the difference between no extra time and only a year's extra time is not decisive. The critical question is whether the removal or reduction of the preexisting sentence nullified a benefit that was expressly promised and was a material inducement to the guilty plea. The basis for our decision in *Pichardo* was that "we cannot say that defendant would have . . . pleaded guilty to the [drug sale charge] had it not been for the . . . conviction for murder, of which he now stands acquitted" (*id.* at 130). So here, we cannot say defendant would have accepted the plea bargain in the murder case had it not been for his 2-to-4-year sentence in the stolen property case, now reduced to a year.

We acknowledge that this application of the *Pichardo* rule will present a practical problem. It imposes no small burden on the People to require them to prepare for another trial in a murder case that was resolved by a plea almost three years ago. In the future, however, such problems should not be hard to avoid—and, indeed, they could have been avoided here. The solution, as we said in *Pichardo,* is for the parties, at the time of the plea, "to spell out, on the record, the consequences that will follow upon the vacatur of the [previous] conviction" (*id.*).

Accordingly, the order of the Appellate Division should be reversed, defendant's motion to vacate the judgment of conviction and sentence granted and the case remitted to County Court for further proceedings on the indictment.

GRAFFEO, J. (dissenting). I would affirm the order of the Appellate Division because this case is easily distinguished from *People v Pichardo* (1 NY3d 126 [2003]) and the record of these

proceedings disclosed that defendant had a different motivation for entering into a negotiated plea than that presumed by the majority in setting aside defendant's plea. The vacatur of the plea in *Pichardo* was predicated on two factors: that the guilty plea had been induced by the sentencing court's express promise that the defendant would receive a lesser sentence to run concurrently with the sentence from a previous conviction, and the parties had agreed that the defendant would not be required to serve any additional prison time as a result of the plea. Neither of these incentives are apparent in this case because defendant agreed to a concurrent sentence that was longer than the prison term he was already serving.

Here, contrary to the majority's view, there is ample record support for the conclusion that defendant would have accepted the plea offer even if he had not been previously convicted of criminal possession of stolen property. Defendant was facing a grand jury indictment that charged him with nine counts, including two counts of murder in the second degree (a class A-I felony), carrying a term of imprisonment of up to 25 years to life. After four days of trial testimony from 16 prosecution witnesses, the People offered defendant a plea to the class E felony of criminally negligent homicide and to the class D felony of criminal possession of a weapon in the third degree, with a recommended term of imprisonment of 4 to 8 years. The People's decision to offer a reduced plea may have been motivated by doubts about the strength of their case. Nevertheless, the fact remains that, at the time of the plea, defendant agreed to enter a plea of guilty because he "believe[d] that there may be sufficient evidence to convict [him] at a trial and [he did not] want to risk being found guilty after trial and receiving a more severe sentence." At no time during these proceedings did defendant indicate that the acceptance of the plea offer was induced by the fact that it would result in him serving one additional year of imprisonment.

An accused who is already serving jail time for a prior conviction may well consider the period of additional imprisonment tied to a plea offer when weighing the risks of proceeding to trial. That was the case in *Pichardo* where the defendant entered a negotiated plea to a drug charge only a week after he was convicted of murder in the second degree and sentenced to a prison term of 20 years to life. On those facts, it was arguable that Pichardo—who faced the real prospect of a life sentence—may have believed that his plea to the drug charge with a concurrent sentence of 1 to 3 years in prison was of little conse-

quence. But there is an undeniable and critical difference when a defendant is on trial and confronting a jury verdict. The exigency of a possible guilty verdict will overshadow most other concerns, particularly here, where defendant could have received a sentence of 25 years to life if found guilty.

Aside from the facts presented in this case, I have serious concerns regarding the application of the majority's rule in future cases. The majority concludes that the distinction between *Pichardo* and this case—no additional prison time versus one more year—is "not decisive" (majority op at 345). But how much additional time will make a difference? Should a defendant serving a sentence of 1 to 3 years for grand larceny in the fourth degree, who subsequently pleads guilty to robbery in the first degree in exchange for a concurrent sentence of 20 years in prison, and later obtains a vacatur of the grand larceny conviction be entitled to withdraw the robbery plea? The better standard to apply, in my view, is a rule that will produce consistent and fair results: when a guilty plea is induced by a court's promise that the defendant will receive a longer sentence to run concurrently with a sentence in another case, and that prior conviction is overturned, the defendant should not be allowed to withdraw the plea because the promise of a total term of aggregate imprisonment has been kept.

The majority suggests that these problems can be averted if a defendant explicitly waives the consequences of vacatur of a prior conviction as part of a negotiated plea agreement. But even absent such a waiver, I believe that under *Pichardo* a defendant should be entitled to have a subsequent guilty plea set aside only if the record clearly demonstrates that the defendant was motivated to enter that plea because the term of imprisonment was less than or equal to the prior concurrent sentence.

Chief Judge KAYE and Judges CIPARICK, READ and JONES concur with Judge SMITH; Judge GRAFFEO dissents and votes to affirm in a separate opinion in which Judge PIGOTT concurs.

Order reversed, defendant's motion, pursuant to CPL 440.10, to vacate the judgment of conviction and sentence granted and case remitted to County Court, Saratoga County, for further proceedings on the indictment.